## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Leah Gage

      v.
                                    Civil No. 24-cv-099-LM
                                    Opinion No. 2024 DNH 074 P

Martin O'Malley, Commissioner
Social Security Administration

### O R D E R

      Plaintiff Leah Gage brought this action seeking judicial review of the decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. Gage moves to reverse the Commissioner's decision (doc. no. 6), and the Commissioner moves to affirm (doc. no. 9). Gage argues that the Administrative Law Judge ("ALJ") erred in his evaluation of certain medical opinions and functional assessments such that the decision is not supported by substantial evidence. For the following reasons, the court affirms the Commissioner's decision.

### STANDARD OF REVIEW

      In reviewing the final decision of the Commissioner under 42 U.S.C. § 405(g), the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Sacilowski v. Saul, 959 F.3d 431, 437 (1st Cir. 2020). The court defers to the ALJ's factual findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); see also Fischer v. Colvin, 831 F.3d 31, 34

(1st Cir. 2016). "Substantial-evidence review is more deferential than it might sound to the lay ear: though certainly 'more than a scintilla' of evidence is required to meet the benchmark, a preponderance of evidence is not." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (citation omitted). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (quotation omitted).

## DISABILITY ANALYSIS FRAMEWORK

The Social Security Administration's regulations set out a five-step, sequential process that ALJs must follow to evaluate whether a person is "disabled" under the Social Security Act—that is, unable to engage in any "substantial gainful activity." See 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1520. The five steps are as follows:

- **Step One**: If the claimant is presently engaging in substantial gainful activity, she is not disabled. § 404.1520(b). If the claimant is not engaging in substantial gainful activity, the ALJ proceeds to the second step. Id. § 404.1520(a)(4).

- **Step Two**: If the claimant does not have any impairment or any combination of impairments that significantly limits her physical or mental ability to do basic work activities, she is not disabled because she lacks a "severe" impairment. Id. § 404.1520(c). If the claimant has a severe impairment or combination of impairments, the ALJ proceeds to the third step. Id. § 404.1520(a)(4).

- **Step Three**: If any of the claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled—and the ALJ need not proceed to steps four and five.

Id. § 404.1520(d). If the claimant's impairments do not meet or equal the listed impairments, the ALJ proceeds to the fourth step. Id. § 404.1520(a)(4).

- **Step Four**: If the claimant's impairments do not prevent her from doing her past relevant work, then she is not disabled. Id. § 404.1520(e)-(f). If the claimant is unable to do her past relevant work, the ALJ proceeds to the fifth step. Id. § 404.1520(a)(4).

- **Step Five**: If the claimant's impairments do not prevent her from doing other work that exists in the national economy, then she is not disabled. Id. § 404.1520(g). If the claimant is not able to do other work, then she is disabled. Id. § 404.1520(a)(4).

At steps one through four, the claimant has the burden of proof. Sacilowski, 959 F.3d at 433-34. At step five, however, the Commissioner has the burden of proof. Id.

If the claimant meets her burden at the first two steps of the sequential analysis, but not at the third, the ALJ proceeds to steps four and five, which begin with a determination of the claimant's "residual functional capacity," i.e., a determination of what kinds of things the claimant can and cannot do, mentally and physically. See 20 C.F.R. § 404.1545(a)(1). A person's residual functional capacity is an assessment of "the most" the claimant can do despite her limitations. Id. After the ALJ determines the claimant's residual functional capacity, the ALJ compares that assessment against the demands of the claimant's past work (at step four) and against other jobs that exist in the national economy (at step five). § 404.1520(e)-(g). If the claimant's residual functional capacity allows her to perform her past relevant work or work that exists in the national economy, the claimant is not disabled. See § 404.1520(a)(4)(iv)-(v), (e), (f).

## BACKGROUND[1]

Gage applied for disability benefits in 2018, alleging an onset of disability on July 7, 2009, but she subsequently amended the onset date to February 3, 2014. Her last insured date was December 31, 2014. Gage alleges disability due to neck pain that began following a motor vehicle accident in 2009.[2]

After the motor vehicle accident, Gage received treatment for neck pain.[3] Physician's Assistant ("PA") Finola Cox examined Gage on February 3, 2014, and noted that her neck and shoulder pain had been severe since the motor vehicle accident. PA Cox also noted that Gage's primary care physician was working to wean her off narcotic pain medications. Gage reported difficulty sleeping, anxiety, and depression. Gage received physical therapy from February 11 to March 28, 2014, for neck and back pain. During a medication follow up appointment in July 2014, Gage reported that her neck and shoulder pain were "moderate." Her physical examination produced normal results except for "mild neck tenderness."

---

[1] As required under the Local Rules in this district, the parties filed statements of material facts to support the motion to reverse and the motion to affirm. LR 9.1(c) & (d). The administrative record is filed and is part of the record in this case. Doc. no. 4. The court recounts only those facts that are necessary to resolve the issues raised in the motions.

[2] The procedural history of Gage's application includes two prior unfavorable administrative decisions, which were appealed to this court and were remanded for further proceedings. The prior proceedings are not material for purposes of judicial review of the third administrative decision that is before the court in this case.

[3] Because Gage's onset date is February 3, 2014, and her date last insured is December 31, 2014, the covered period for purposes of Gage's alleged disability is February 3 to December 31, 2014.

In September 2014, Gage met with her primary care physician, Dr. Matthew Mitschele, and reported that her neck and shoulder pain was intermittent and sharp. She also reported weakness and tingling associated with the pain.[4] On examination, Dr. Mitschele found all aspects of her examination to be "normal" and that her range of motion in her spine and both shoulders was "normal" and "pain free." Dr. Mitschele wrote that Gage's neck pain was controlled and stable.

Gage received chiropractic treatment with Nichia Faria, D.C. during the relevant period. Dr. Faria noted limited range of motion in Gage's cervical and thoracic spine. Gage reported less severity in her neck and back pain and less frequent pain except after she did gardening and yard work. In her treatment notes for September, October, and December 2014, Dr. Faria reported that Gage was making slow and steady improvement.

On January 8, 2015, Gage sought treatment with Dr. Faria and reported pain in her low back at a level of 6 out of 10 and also complained of upper back pain. Dr. Faria, however, noted that Gage's walking had improved and that she showed improved function. Gage reported continuing pain to Dr. Faria on April 15, 2015 and at subsequent treatment sessions. Gage saw Dr. Mitschele in October 2015 for a preventative examination because she was considering pregnancy, and her physical examination results were normal.

---

[4] Although Gage states in the statement of facts that the tingling was in her "upper extremities," her chiropractor's progress notes show tingling in the neck and shoulder.

I.      Opinions and Functional Assessment Results

On May 10, 2010, an Assessment Specialist, Jane O'Connor, at Rehab 3, a department of Frisbie Memorial Hospital in Rochester, New Hampshire, completed a KEY functional assessment for Gage. O'Connor found that Gage was limited in her ability to lift and carry to less than 10 pounds and had some limitations in her ability to do postural activities. She found that Gage could work five to six hours in a workday and could progress to eight hours if appropriate. O'Connor also reported that the assessment results were conditionally invalid because of certain inconsistencies, including "selectivity of pain reports and pain behaviors" and Gage's tendency "to perform beyond the safety level." Doc. No. 4-12, at 126.

As part of the administrative process, Dr. Phyllis Sandell, a state agency physician, reviewed Gage's records and provided her findings on December 18, 2018. She found that Gage had a severe medically determinable impairment due to "Disorders of Muscle, Ligament and Fascia." Doc. No. 4-3, at 11. Dr. Sandell found that Gage could occasionally lift, carry, and pull up to 10 pounds and had limitations in the time she could stand, walk, and sit, along with some postural and manipulative limitations. Dr. Sandell explained that Gage had neck pain, but her x-rays showed only mild degenerative disc changes in the cervical spine and that her medical record indicated that she was improving. Gage's application for benefits was denied.

On June 7, 2019, David Quint, an assessment specialist at Marsh Brook Rehab, completed another KEY functional assessment for Gage. Quint found that Gage could work for six hours in a workday with frequent position changes, could

lift and carry less than 10 pounds bilaterally, and had limitations in her ability to do postural activities.

In July 2019, Dr. Faria completed a disability questionnaire for Gage. She indicated that pain or other symptoms would occasionally interfere with Gage's attention and concentration at work and noted that stress increased her symptoms. She wrote that Gage could stand and walk in alternate one-hour increments, could lift up to 10 pounds occasionally, would need breaks during a workday, and otherwise had only minimal or no limitations.

Prior to the June 2023 hearing, Dr. Steven Goldstein, a medical doctor board certified in neurology and internal medicine, reviewed the medical evidence in Gage's record and testified as an impartial medical expert at the hearing. Dr. Goldstein concluded that during the covered period, February 3 to December 31, 2014, Gage was able to do at least light activity and that nothing in the record indicated limitations in reaching, sitting, or standing. Dr. Goldstein also noted that Gage's neurological findings were normal in 2018 when he would have expected her condition to worsen over the time since the covered period. In addition, Dr. Goldstein reviewed Dr. Faria's 2019 assessment and testified that Gage had no underlying medical impairment that would require the reduced functioning indicated in Dr. Faria's assessment. In response to questioning by Gage's counsel, Dr. Goldstein testified that the limitations found in the 2010 assessment were not supported by a medically determinable impairment and noted that the record included evidence that Gage was exercising 15 to 20 hours each week, which included gardening and walking her dog.

II.     Decision

The ALJ found at Step Two that Gage had degenerative disc disease and degenerative joint disease of the cervical spine that were severe impairments. Despite those impairments, the ALJ found that Gage retained the residual functional capacity to do light work with occasional climbing activities and frequent postural activities. With that functional capacity and based on the hearing testimony of the vocational expert, the ALJ found that Gage could return to her work as a short order cook and a passport examiner. As a result, the ALJ found that Gage was not disabled. When the Appeals Council denied her request for review, that decision became the final decision of the Commission.

## DISCUSSION

Gage argues that the Commissioner's decision "is not supported by the substantial weight of the evidence" because the ALJ did not properly consider Dr. Faria's 2019 opinion or the KEY assessment results. Doc. no. 6-1 at 3. Gage also contends that the ALJ erred in failing to consider her myofascial pain syndrome that was identified by Dr. Sandell. Id. at 4. In addition, Gage challenges the ALJ's reliance on Dr. Goldstein's opinion. Id.

I.      The ALJ Properly Evaluated Opinion and Assessment Evidence

The ALJ assessed Gage's residual functional capacity based on the record evidence. Because the ALJ relied on Dr. Goldstein's review of Gage's medical record, his evaluation of the opinions in the record, and his functional capacity assessment,

the court addresses Gage's challenge to Dr. Goldstein's opinion first and then considers the issues Gage raises about Dr. Faria's opinion, Dr. Sandell's findings, and the KEY assessments.

### A.   <u>Dr. Goldstein's Opinion</u>

Dr. Goldstein reviewed Gage's medical record and testified at the hearing as an impartial medical expert. Dr. Goldstein testified that Gage had degenerative disc disease within the covered period, that degenerative disc disease slowly progresses, and that Gage complained of neck pain during and after the covered period. Dr. Goldstein noted that in November 2016, despite neck pain, Gage was able to garden, walk the dog, generally do activities at a moderate level, and exercise for hours each week. He also noted that Gage had a normal neurological examination in 2018 although he would have expected her degenerative disc disease to have worsened by then. Dr. Goldstein testified that as of December 2014 Gage would have been able to do work at least at the light exertional level, with some slight postural limitations.

Gage asserts that the ALJ should not have relied on Dr. Goldstein's opinion because he is not a board-certified orthopedist. Gage fails to explain, however, why a physician who is board-certified in neurology and internal medicine is not qualified to review her medical records pertaining to her alleged neck pain, including the opinion provided by a chiropractor and the finding made by a state agency physician in a prior administrative decision. Further, impartial medical

experts who are board-certified internists or neurologists regularly provide opinions about functional capacity in light of a claimants' back or neck pain.[5]

Gage also faults Dr. Goldstein for testifying that she had not been diagnosed with soft tissue injuries during the relevant time period. Dr. Goldstein actually testified in response to questioning by Gage's counsel about the 2019 functional assessment that he did not see any reason in Gage's medical records for the extent of impairment found. When counsel asked if Gage could have a soft tissue injury that did not show up on the imaging that was done, Dr. Goldstein testified that he "did not see any soft tissue injury diagnosis." Doc. no. 4-21, at 56. Counsel did not then point Dr. Goldstein to a diagnosed soft tissue injury. Gage now cites parts of the record that reference soft tissue, but the cited parts do not show that Gage was diagnosed with a soft tissue injury. Gage provides no grounds to disregard Dr. Goldstein's opinion.

---

[5] Impartial medical experts who are board certified in internal medicine, as Dr. Goldstein is, are qualified to provide opinions in SSA cases about claimants' back and neck pain based on their review of the claimants' medical records. See, e.g., Beard v. Comm'r of Soc. Sec., No. 6:20-CV-2332-LHP, 2022 WL 4310011, at *4 (M.D. Fla. Sept. 19, 2022); Robinson v. Kijakazi, No. CIV-20-47-JFH-SPS, 2021 WL 4434307, at *5 (E.D. Okla. Sept. 9, 2021), report and recommendation adopted sub nom. Robinson v. Comm'r of the Soc. Sec. Admin., No. CIV-20-47-JFH-SPS, 2021 WL 4430010 (E.D. Okla. Sept. 27, 2021); Bryant v. Comm'r of Soc. Sec., No. 2:20-CV-294-JLB-NPM, 2021 WL 4067464, at *5 (M.D. Fla. July 29, 2021), report and recommendation adopted, No. 2:20-CV-294-JLB-NPM, 2021 WL 3855941 (M.D. Fla. Aug. 30, 2021); Hines v. Saul, No. CA 20-0210-MU, 2021 WL 1031968, at *5 (S.D. Ala. Mar. 17, 2021). Not surprisingly, impartial medical experts who are board certified in neurology, as Dr. Goldstein is, are also qualified to provide opinions about back and neck pain. See, e.g., Borgen v. O'Malley, No. 22-cv-690-MHH, 2024 WL 2330003, at *11 (N.D. Ala. May 22, 2024); Hines v. Saul, No. 20-cv-210-MU, 2021 WL 1031968, at *5 (S.D. Ala. Mar. 17, 2021); Sturgeon v. Comm'r of Soc. Sec., No. 1:08-CV-510, 2009 WL 2005276, at *9 (S.D. Ohio July 6, 2009).

B.    Dr. Faria's 2019 Opinion

Gage also argues that the ALJ erred in finding Dr. Faria's 2019 opinion

unpersuasive. She asserts that the ALJ noted only that Dr. Faria was not an

acceptable medical source and did not otherwise address her opinion. Contrary to

Gage's argument, the ALJ did provide additional reasons for not finding Dr. Faria's

opinion persuasive.

The ALJ noted Dr. Faria's long treatment relationship with Gage. He found

the opinion less than fully persuasive, however, because Dr. Faria is not an

acceptable medical source[6] and because Dr. Goldstein testified that Dr. Faria's

opinion was not consistent with or supported by the medical evidence that existed

before Gage's last insured date, December 31, 2014.[7] As such, contrary to Gage's

---

[6] Dr. Faria is a chiropractor. Under SSA Program Operations Manual System 22505.003 (cited by Gage), chiropractors are not acceptable medical sources, and objective evidence from an acceptable medical source is required to establish a medically determinable impairment. Once a medically determinable impairment is properly established by an acceptable medical source, an ALJ may consider evidence from chiropractors for other purposes, including the severity of the impairment. Id; see also 20 C.F.R. §§ 404.1502 & 404.1513.

[7] Importantly, Gage's claim for disability benefits covers only the period from February 3 to December 31, 2014, which is the covered period. Gage bears the burden of showing that she became disabled during that period. See Gour v. Saul, No. 18-cv-30155-KAR, 2020 WL 429450, at *13 (D. Mass. Jan. 27, 2020); Casull v. Comm'r of Social Security, No. 16-cv-1620-MEL, 2017 WL 5462185, at *4 (D.P.R. Nov. 14, 2017). An ALJ may consider opinions of disability from outside the covered period, but only to the extent that evidence shows that a disability existed during the covered period. Tucker v. Kijakazi, No. 21-CV-10317-DLC, 2022 WL 18032978, at *2 (D. Mass. Sept. 30, 2022); Hearn v. Kijakazi, No. 21-CV-842-SE, 2022 WL 3974281, at *4 (D.N.H. Sept. 1, 2022). Further, a retrospective opinion, which is generated outside the covered period, "provides a diagnosis or assesses a claimant's condition during the covered period, that is, before the claimant's last insured date." Martin v. Acting Comm'r, Soc. Sec. Admin., No. 21-CV-416-SE, 2022 WL 1463055,

argument, the ALJ did not find Dr. Faria's opinion unpersuasive simply because she is not an acceptable medical source. The ALJ relied on both Dr. Goldstein's review of the medical record to evaluate Dr. Faria's opinion and the fact that Dr. Faria's opinion, which was given in 2019, was far outside the covered period.

      C.      <u>Dr. Sandell's Findings</u>

Gage further argues that the ALJ failed to address "the issue of [her] myofascial pain syndrome that had been identified" by Dr. Sandell. Doc. no. 6-1 at 4. Gage appears to concede, however, that Dr. Sandell did not diagnose or find that Gage had myofascial pain syndrome and instead noted a severe impairment under "7280 Disorders of Muscle, Ligament and Fascia" without explanation. <u>Id.</u> Gage cites no record evidence that she was diagnosed with myofascial pain syndrome. The cited finding by Dr. Sandell does not differentiate among disorders of the fascia, muscle, or ligament. As presented, Gage has not shown any error in the ALJ's analysis.

---

at *4 (D.N.H. Apr. 8, 2022), <u>report and recommendation adopted sub nom.</u> <u>Martin v. US Soc. Sec. Admin.</u>, No. 21-CV-416-SE, 2022 WL 1462980 (D.N.H. May 6, 2022). An ALJ may accept a retrospective opinion "to the extent it substantiates limitations that existed during the covered period and is corroborated by medical evidence generated during that time" or an ALJ may reject an opinion that does not meet that standard. <u>Id.</u>; <u>Scott v. Saul</u>, No. 19-12552-LTS, 2021 WL 735851, at *9 (D. Mass. Feb. 25, 2021). Dr. Faria's opinion was generated almost five years after the covered period and does not provide an assessment of Gage's condition during the covered period.

D.    KEY Functional Assessments

Gage next contends that the ALJ erred in finding the two KEY functional assessments unpersuasive. One assessment was done in May of 2010 (years before the covered period) and one was done in 2019 (years after her last insured date in 2014). Gage argues that because the results are similar, the ALJ should have relied on the assessments.

The ALJ found the assessment results unpersuasive in part because neither of the assessment specialists was an acceptable medical source. Addressing the 2019 assessment that limited Gage to sedentary exertion, the ALJ noted that the assessment was done years after the covered period, which was too far removed to be persuasive. The ALJ also cited Dr. Goldstein's opinion that although Gage's neck condition was worsening with time, her cervical spine abnormalities would not result in sitting limitations, making the assessment inconsistent with other medical evidence.

With respect to the 2010 assessment, the ALJ found it noteworthy that the assessment specialist, Jane O'Connor, found Gage's effort "invalid," which the ALJ interpreted to mean "invalid due to poor effort."[8] Doc. no. 4-21, at 23. The ALJ also

_____

[8] O'Connor found with respect to "Validity of Participation" that the assessment results were a "Conditionally Invalid representation of capability level," where "Conditionally Invalid" was defined as "Exceeded long term safe capabilities." Doc. no. 4-12 at 130. She explained in her letter to Gage's physician, however, that the assessment was a conditionally invalid representation of Gage's capabilities because of "consistencies and inconsistencies when interfacing grip dynamometer graphing, resistance dynamometer graphing, heart rate variations, weights achieved, and selectivity of pain reports and pain behaviors." Doc. no. 4-12, at 126.

relied on Dr. Goldstein's opinion that there was no objective medical evidence to support the limitations that O'Connor found. The ALJ credited Dr. Goldstein's opinion that the KEY assessment was based on only one day, rather than a longitudinal view, and was done four years before the covered period. Even if the ALJ incorrectly interpreted O'Connor's findings about invalidity of the 2010 assessment, the remainder of the analysis provides adequate grounds to support the ALJ's finding that the assessment was not persuasive.

II.    <u>The ALJ Properly Assessed Gage's Residual Functional Capacity</u>

As noted above, for purposes of a social security application, a claimant's residual functional capacity is an assessment of "the most" the claimant can do despite her limitations. <u>See</u> 20 C.F.R. § 404.1545(a)(1). To make that assessment, the ALJ must consider "all of the relevant medical and other evidence" and all of the claimant's "medically determinable impairments" about which the ALJ is aware. <u>Id.</u> § 404.1545(a)(2), (a)(3). The ALJ must also consider the claimant's own subjective allegations of functional limitations, but the ALJ "'is not required to take those allegations at face value and may reject them where they are unsupported by the medical evidence, treatment history, and activities of daily living.'" <u>Halsey-Ricks v. Soc. Sec. Admin., Comm'r</u>, No. 23-CV-481-LM, --- F. Supp. 3d ---, 2024 WL 3507604, at *6 (D.N.H. July 23, 2024) (quoting <u>Richards v. Kijakazi</u>, 554 F. Supp. 3d 242, 252

---

O'Connor also wrote that Gage "demonstrates a tendency to perform beyond their safety level." <u>Id.</u> Taken in context, it is not entirely clear what O'Connor found was invalid about Gage's participation in the assessment.

(D. Mass. 2021)); see also Richardson v. Saul, 565 F. Supp. 3d 154, 170 (D.N.H. 2021).

Gage asserts that the ALJ's residual functional capacity assessment is not supported by substantial evidence. She is mistaken. The ALJ found that despite Gage's severe impairment of degenerative disc and joint disease in the cervical spine, Gage had the residual functional capacity to do light work with some postural limitations. In making that assessment, the ALJ addressed Gage's hearing testimony about her exertional and non-exertional problems but found that the severity of symptoms that Gage described was not supported by the medical evidence. In support, the ALJ cited medical records that showed normal or near normal examination results during the covered period. The ALJ noted that much of the medical evidence that Gage provided was far outside of the covered period but that even those examination results were largely normal.

Importantly, Dr. Goldstein provided his opinion that Gage retained the residual functional capacity to do light work with minor restrictions. The ALJ examined the medical evidence in the record, considered Gage's testimony, found Dr. Goldstein's opinion persuasive, explained why he found other opinions unpersuasive, and assessed Gage's residual functional capacity based on Dr. Goldstein's opinion. As such, Gage has not shown any error in the ALJ's residual functional capacity assessment.

Because substantial evidence supports the Commissioner's disability determination, it is affirmed.

## **CONCLUSION**

For the foregoing reasons, the court denies the claimant's motion to reverse

(doc. no. 6) and grants the Commissioner's motion to affirm (doc. no. 9).

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

September 11, 2024

cc:  Counsel of record.

16